**GRUPO CONDUMEX, S.A. DE C.V., et al., Plaintiffs,**

v.

**SPX CORP., et al., Defendants.**

**Nos. 3:99CV7316, 3:99CV7502.**

United States District Court,
N.D. Ohio,
Western Division.

Sept. 1, 2004.

Anthony J. Rotondi, Howard Zelbo, Jeffrey A. Rosenthal, Robert T. Greig, Cleary, Gottlieb, Steen & Hamilton, New York, NY, Jacqueline M. Boney, Cooper & Walinski, Toledo, Jessica Zeldin, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Margaret G. Beck, Martin J. Witherell, Mary A. Whipple, Fuller & Henry, Toledo, OH, William M. Lafferty, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Grupo Condumex S.A. De C.V., a Mexico corp., Promotora De Industries Mecanicas, S.A. De C.V., a Mexican corp., Plaintiffs.

Evan S. Williams, Gardner, Carton & Douglas, Chicago, IL, James P. Silk, Jr., Spengler Nathanson, Toledo, OH, John F. Ward, Jr., Jenner & Block, Michael E. Barry, Gardner, Carton & Douglas, Chicago, IL, Theodore M. Rowen, Truman A. Greenwood, Spengler Nathanson, Toledo, OH, Joseph P. Thacker, Michael E. Barry, Richard S. Walinski, Cooper & Walinski, Toledo, OH, David C. McBride, Jacqueline M. Boney, John W. Shaw, Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE, Patricia B. Fugee, Roetzel & Andress, Toledo, OH, Peter C. John, Williams, Montgomery & John, Chicago, IL, for SPX Corp., a Delaware corp. Sealed Power Technologies Ltd. Partnership, a Delaware Ltd. partnership, Dana Corp., a Virginia corp., Sealed Power Technologies Corp. of Nevada, Defendants.

## ORDER

CARR, District Judge.

Pending before the Court are three motions: plaintiff Grupo Condumex's motion

for partial summary judgment as to attorney's fees (Doc. 149); defendant Dana Corporation's and plaintiff Grupo Condumex's motion for protective order (Doc. 153); and defendant SPX Corporation's motion for summary judgment (Doc. 172). For the reasons set forth below, plaintiff's partial summary judgment motion will be denied, the motion for a protective order will be granted in part and denied in part, and defendant's motion for summary judgment will be denied.

## BACKGROUND

The details of this case have been set forth in numerous orders and pleadings in the over five years this case has been pending in this Court. The following facts will suffice for purposes of the pending three motions.

This case began as a suit by Grupo Condumex (Condumex) against SPX Corporation (SPX) and Dana Corporation (Dana) after SPX and Dana entered into an agreement for SPX to sell, and Dana to buy, SPX's "sealed power" division. One of the assets owned by that division was a company, Sealed Power Nevada (SPN), which, in turn, owned (as its only asset) forty percent of the shares of a Promec, which began as a joint venture between SPX and Condumex. In other words, as a result of the purchase of the sealed power division, Dana owned forty percent of Promec.

Originally, however, when Condumex and SPX formed their Promec joint venture, they agreed that Condumex would have a right of first refusal if SPX desired to sell its shares in Promec. Asserting its right of first refusal, on learning about the Dana/SPX transaction before its consummation, Condumex objected to the sale of SPN/Promec to Dana. Despite Condumex's claim of a right of first refusal, the sale to Dana was completed.

When Condumex thereafter sued SPX and Dana, I found that SPX had in fact breached the right of first refusal. I ordered Dana to cause its Promec shares to be transferred to Condumex. At that point, Condumex was also asserting claims for damages against SPX and Dana, and Dana, in turn, had a cross-claim against SPX.

In the meantime, Dana and Condumex have settled the remaining disputes between them. As part of their settlement agreement, Condumex assigned its remaining claims against SPX, which include claims for damages to its business from the delay in acquiring the Promec shares and for its attorney fees, to Dana. Dana, as assignee of those claims, now seeks to recover on those claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the

material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## DISCUSSION

### I. Motion for Summary Judgment as to Damages Claim

■ SPX seeks summary judgment on the claims Dana obtained by assignment from Condumex on the basis that Dana was, along with SPX, a wrongdoer who now comes before the court with unclean hands. In support of its motion, SPX cites, *inter alia, DeJong v. B.F. Goodrich, Inc.*, 96 Mich.App. 36, 292 N.W.2d 157 (1980).[1] Dana argues that because it has not be found to be a tortfeasor, that these defenses do not apply.

### A. Prohibition Against "Wrongdoers" Profiting from Their Wrongs

■ Under *DeJong* a wrongdoer cannot profit from its wrong by collecting, via an assignment, the injured plaintiff's damages claim against another wrongdoer. 292 N.W.2d at 159–60. Michigan courts recognize that such a profit would violate public policy. *Id.* at 159.

While *DeJong* and other cases do not define "wrongdoer," that status appears to depend on an antecedent nonperformance of a contractual obligation or commission of a tort. *Id.* at 159–60; *see also Dubina v. Mesirow Realty Dev., Inc.*, 308 Ill. App.3d 348, 241 Ill.Dec. 681, 719 N.E.2d 1084, 1091 (1999); *International Proteins Corp. v. Ralston–Purina Corp.*, 744 S.W.2d 932, 934 (Tex.1988).

Dana cannot be found to have been a wrongdoer with regard to any contractual obligation. The contract at issue and its obligations, bound SPX and Condumex—not Dana, which was not a party to that contract.

■ With regard to any tort chargeable to Dana, the most applicable tort would be interference with contract. Such cause of action requires a showing that Dana "unjustifiably instigated a breach of contract." *CMI Intern., Inc. v. Intermet Intern. Corp.*, 251 Mich.App. 125, 649 N.W.2d 808, 812 (2002) (internal citation omitted). Put another way, it requires "the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Id.* (internal citations omitted).

---

1. As I have previously ruled, the Sales Contract between SPX and Condumex provides that Michigan law will control "any controversy arising out of or related to" the agreement. (Order, Nov. 4, 1999, Doc. 188). Thus, Michigan law controls this particular controversy.

As Dana points out, this tort requires more than just knowledge accompanied by action. *Id.* at 812 ("If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference."); *see also* Restatement (Second) of Torts § 766, comment h. There must be some actual tortious behavior—be it threats, intimidation, improper inducements, or otherwise—that would constitute somewhat of a "plus" factor to give rise to a tort, rather that just a breach of contract claim. *See generally id.* § 766, comment h.

SPX argues that because I previously found that some of the executives of Dana's subsidiaries had acted boastfully about taking over Promec, that the "plus" factor is met. For the conduct to which SPX refers to be considered the "plus" factor, however, it would need to be some misconduct directed at SPX, or toward the goal of having SPX breach its contract. In other words, it would need to be tortious vis-a-vis at least one of the contracting parties.

The conduct referred to in my December 3, 1999 Order is not conduct that would meet the "plus" factor. First, that conduct was not directed toward SPX, and did not seek to coerce or otherwise improperly cause SPX to breach its obligations to Condumex. Though directed toward Condumex, that conduct was not threatening or intimidating. Indeed, Dana's statements about taking over Promec—like the taunts of a schoolyard bully who underestimates his target's strength—provoked, rather than deterred, a hostile, aggressive, and successful response.

I conclude, accordingly, that Dana is not a "wrongdoer," as that term is used in *DeJong* and similar cases. It breached no contract and committed no tort vis-a-vis Condumex.

## B. Doctrine of Unclean Hands

As explained by the United States Supreme Court, the doctrine of unclean hands is an equitable defense "that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *See Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945) (internal citations omitted); *see also Stachnik v. Winkel,* 394 Mich. 375, 230 N.W.2d 529, 532 (1975) (quoting *Precision Instrument*). By requiring those seeking the aid of equity must come before the court with "clean hands," the doctrine preserves the integrity of the judiciary. *Id.* at 532; *see also Rose v. National Auction Group, Inc.,* 466 Mich. 453, 646 N.W.2d 455, 463 (2002). When implemented, the doctrine calls on the court to balance the equities between the parties. *See generally Nakahara v. NS 1991 American Trust,* 718 A.2d 518, 522 (Del.Ch.1998) (explaining the history and application of the doctrine of unclean hands).

Here, if I were to apply the doctrine of unclean hands to prevent realization of the assignment of damages between Dana and Condumex, the only real beneficiary of my ruling would be SPX. In essence, SPX would receive a windfall, by reason of its breach of the right of first refusal in its contractual relationship with Condumex. It would, in essence, avoid liability for the breach.

As noted above, although certainly a willing participant, Dana did not, itself, breach any contractual agreement by purchasing Promec. It also did not commit a tort, and specifically, did not commit tortious interference with contract, given that it did not improperly induce, threaten, or

seek to persuade SPX to breach its contract with Condumex.

The doctrine of unclean hands does not prevent Dana from collecting on its assignment of Condumex's damages claims against SPX.

For all of these reasons, the motion SPX's for summary judgment must be denied.

## II. Motion for Partial Summary Judgment as to Attorneys' Fees

Dana, as assignee of Condumex's damages claims against SPX, also seeks to recover the attorneys' fees incurred by Condumex in its successful challenge to the transfer of Promec shares to Dana. This claim is based on the "collateral litigation doctrine," which is an exception to the general "American rule" that each party bears its own attorneys' fees. *See generally* Restatement (First) of Contracts, § 334 (1932). The collateral litigation doctrine generally provides that if the defendant's breach of a contract causes, as a natural result of the breach, the plaintiff to have to sue a third party in a separate lawsuit, then the plaintiff is entitled to recover its attorneys' fees from that lawsuit as damages against the defendant in a subsequent lawsuit. It requires, as its predicate, two lawsuits—one against the third party, and one against the defendant—thus the moniker "*collateral* litigation." *Id.; see also City of Cottleville v. St. Charles County*, 91 S.W.3d 148, 150–51 (Mo.App.2002) (ex-

plaining collateral litigation exception to American rule).[2]

A seminal Delaware case emphasizing Delaware's adherence to the American rule for attorneys' fees is *Casson v. Nationwide Ins. Co.*, 455 A.2d 361 (Del.Super.Ct.1982). Specifically, the Delaware court found that "[i]n an action at law, a court may not order the payment of attorney's fees as part of costs to be paid by the losing party unless the payment of such fees is authorized by some provision of statute or contract." *Id.* at 370. Absent a contractual or statutory provision, generally no fee shifting is available under Delaware law. *Id.; see also Walsh v. Hotel Corp. of America*, 231 A.2d 458 (Del.1967). There is no such contractual or statutory provision in this case.

Dana and SPX acknowledge that Delaware does not follow the collateral litigation exception to the American rule for attorneys' fees. (Doc. 150, at 7; Doc. 179, at 6.) Given the acknowledgment that there is no basis in Delaware law for such an award, the motion for partial summary judgment must be denied.

In any event, even if Delaware acknowledged the collateral litigation doctrine, it is doubtful it would apply in this case given the lack of "collateral" litigation. Here, we only have one lawsuit, against separate defendants. Because there has been no collateral litigation there is no basis for shifting the fees incurred by Condumex onto SPX.

---

2. I have previously ruled that Delaware law governs the adjudication of remedy-related issues in this case. (Order, Dec. 3, 1999, Doc. 211.) As that constitutes the law of the case in this matter, and finding no reason to revisit it, that ruling stands.

Even if I were to revisit that holding and find that Michigan law applies, the result would be the same. Michigan law permits fee shifting in cases where the party's malicious or fraudulent conduct resulted in additional litigation against a third party. *Mieras v. DeBona*, 204

Mich.App. 703, 516 N.W.2d 154 (1994), *rev'd on other grounds*, 452 Mich. 278, 550 N.W.2d 202 (1996). However, as explained in *In re Thomas Estate*, 211 Mich.App. 594, 536 N.W.2d 579 (1995), this so-called "prior litigation exception" does not apply in situations, such as the instant case, involving only one litigation. Here, Condumex sued, in one lawsuit, both Dana and SPX. Under Michigan law, the attorneys' fees against one defendant in the lawsuit are not chargeable to another defendant in the same lawsuit. *Id.*

## III. Motion for Protective Order

Condumex and Dana have brought a motion for an order of this court disallowing SPX to discover settlement communications between Condumex and Dana, citing the "settlement privilege" recognized by the Sixth Circuit in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir.2003). SPX opposes the motion on the following bases: 1) *Goodyear* was wrongly decided because it announced a privilege rule in a diversity case, rather than applying the appropriate state law privilege rules; 2) most of the documents it seeks are not settlement communications; and, 3) Dana and Condumex waived the privilege by producing the settlement agreement and/or putting its terms at issue.

Party communications during settlement negotiations are now privileged under the Sixth Circuit's decision in *Goodyear*.[3] 332 F.3d at 981–82. Therefore, I must assume a settlement privilege exists and that it is applicable to the instant diversity case.

A settlement privilege only applies, however, to "settlement communications" themselves. *Id.* at 981–82 (explaining that the *existence* of the settlement is not privileged, only the underlying communications). To the extent SPX is seeking actual settlement communications, the motion for a protective order is granted.

However, as SPX points out in its response to the motion, there are several items or documents which were apparently exchanged during settlement negotiations but were not authored or created for the purpose of settlement negotiations. I can see no reason to impose a blanket protection for those communications. Documents created for some other purpose do not get clothed in a settlement privilege just because they are exchanged during negotiations. Rather, they must be the type of communications that the privilege was designed to protect: namely, those that are inherently unreliable because of the likelihood of puffery. Therefore, to the extent that there are documents exchanged during but not specifically created for settlement negotiations, those documents are not protected, and the motion for protective order is denied as to them.

And finally, SPX's contention that Dana has waived the privilege is not well-taken. Dana produced the settlement agreement, which is unprotected under *Goodyear*. *Id.* (*existence* of the settlement and/or its terms generally not privileged). Producing something that is not privileged does not waive the privilege as to other protected communications. Further, placing damages into issue does not open the door to other communications prior to the actual settlement. SPX's alleged failure to understand what value changed hands pursuant to the Dana/Condumex settlement does not waive the privilege as to otherwise privileged material.[4] Dana and Con-

---

**3.** *Goodyear* was a diversity case, and as such, should have been governed by the controlling state's law of privilege. Fed.R.Evid. 501 ("[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."). However, the Sixth Circuit chose to announce a federal settlement privilege in *Goodyear*. Regardless of any latent misgivings I might have about the propriety of the

rule announced by the Sixth Circuit in *Goodyear*, I am bound to apply governing Sixth Circuit precedent. *City of Toledo v. Beazer Materials & Servs., Inc.*, 923 F.Supp. 1013, 1023 (N.D.Ohio 1996).

**4.** Furthermore, SPX has failed to explained why its inability to understand the settlement cannot be remedied by production of documentation occurring *after* rather than during settlement. Surely there are other discovery methods available (interrogatories, depositions, etc.) which would provide more infor-

dumex have not waived their settlement privilege.

Before prescribing procedures for asserting, challenging, and reviewing claims of privilege, I will meet with the parties to discuss how to proceed in light of the foregoing discussion of the settlement privilege.

In the meantime, the motion for protective order is granted in part and denied in part.

## CONCLUSION

It is, therefore,

ORDERED THAT:

1. The motion for summary judgment as to liability for damages be, and the same hereby is denied; and

2. The motion for partial summary judgment as to liability for attorney's fees be, and the same hereby is denied; and

3. The motion for a protective order be, and the same hereby is granted in part and denied in part, as explained above.

A pretrial conference to review procedures relating to claims of privilege is scheduled for September 20, 2004 at 10:30 a.m.

So ordered.

mation, and would not be protected by the settlement privilege.