NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0675n.06
Filed: September 7, 2006

No. 05-4094

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| GRUPO CONDUMEX, S.A. DE C.V., A Mexico Corporation; PROMOTORA DE INDUSTRIES MECANICAS, S.A. DE C.V., A Mexican Corporation, | ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| SPX CORPORATION; SEALED POWER TECHNOLOGIES LIMITED PARTNERSHIP, A Delaware Limited Partnership, | ) ) ) ) ) | |
| Defendants-Appellees, | ) ) | |
| DANA CORPORATION, A Virginia Corporation, | ) ) ) | |
| Defendant-Appellant. | ) | |

Before: BATCHELDER, CLAY, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. This diversity case concerns various issues that arise when an acquisition agreement is clumsily drafted. SPX Corporation sold its automotive Sealed Power Division to Dana Corporation, despite the protests of Grupo Condumex, S.A. de C.V. (Condumex) that Condumex had the right to purchase SPX's interest in one of the subsidiaries of the Sealed

Power Division before the subsidiary could be sold to anyone else. Condumex thereafter sued SPX and Dana, and the district court ordered Dana to deliver to Condumex the shares of the subsidiary, Promotora de Industrias Mecanicas, S.A. de C.V. (Promec).

Dana then brought two separate claims against SPX. First, Dana sued SPX for indemnification pursuant to the parties' Asset Purchase Agreement. The district court found that the agreement unambiguously relieved SPX of liability. According to the district court, the indemnification provision limited SPX's indemnification obligation to the extent that it had knowledge of Condumex's right of first refusal, and there was no evidence that SPX had such knowledge. Second, Dana sued SPX for Condumex's attorney's fees. Dana and Condumex had previously reached a settlement where, among other things, Condumex assigned its claims against SPX to Dana. The district court granted summary judgment in favor of SPX on this claim as well, ruling that Delaware law did not recognize any basis for attorney's fees under the circumstances.

Dana now appeals, arguing that (1) the indemnification provision did not require SPX's knowledge that the right-of-first-refusal warranty was inaccurate; (2) in any event, SPX knew of the inaccuracy; (3) SPX's sale of the Promec shares also breached warranties regarding the company that owned an interest in Promec; and (4) Dana was entitled under Delaware law to Condumex's attorney's fees under the collateral litigation exception to the American rule. Although the district court properly found that the indemnification provision required SPX's knowledge of the inaccuracy of the Promec warranty, a genuine issue of material fact exists as to whether SPX possessed such knowledge, and therefore we reverse the district court's judgment. For all other issues, we affirm.

**I.**

In 1981, SPX, through its wholly-owned subsidiary Sealed Power Technologies Corporation of Nevada (SP NV), sold sixty percent of its interest in Promec to Condumex. SPX was forced to sell part of Promec, a Mexican automotive parts manufacturer, after Mexico enacted a statute requiring that companies doing business within the country have a certain threshold of Mexican ownership. At the same time, SPX and Condumex entered into a shareholders' agreement providing, among other things, that Condumex had a right of first refusal in the event that SPX sought to sell its remaining interest in Promec. This right of first refusal was further recognized in Promec's bylaws.

Eight years later, SPX underwent restructuring. As part of its restructuring, SPX formed Sealed Power Technologies Limited Partnership (SPT) and transferred its Sealed Power Division, including SP NV (and its interest in Promec), to SPT. Because SPX shared the ownership of SPT with both Goldman Sachs and SPT's management, James Sheridan, SPX's general counsel, obtained Condumex's consent to transfer the Promec shares to SPT. Sheridan arguably sought Condumex's consent in recognition of Condumex's right of first refusal. Later, in 1994, SPX repurchased all interests in SPT and therefore became the full owner of SP NV again.

**A.      SPX and Dana deal**

In 1996, SPX began negotiating the sale of its Sealed Power Division to Dana, a multinational automotive supply corporation. By this time, the Sealed Power Division consisted of

several companies, including (1) SP NV, which owned forty percent of Promec, and (2) a fifty-percent interest in the Allied Ring Corporation. Before signing a letter of intent with Dana, SPX notified Condumex's CEO, Pedro Ruiz, of the impending deal. Ruiz objected to the sale, and a few days later Condumex asserted that it had a right of first refusal under Promec bylaws. For the next several months, Condumex repeatedly informed SPX and Dana that it wished to exercise its first refusal rights pursuant to the bylaws. Both SPX and Dana maintained, however, that Condumex had no right of first refusal under Promec's bylaws because, although SP NV was being sold, SP NV would continue to own the Promec shares and thus the shares would not be transferred.

SPX and Dana completed the sale in February 1997. The terms of the sale were set forth in the Asset Purchase Agreement (Purchase Agreement), which contained, among other things, several warranties by SPX. Section 3.2 of the Purchase Agreement warranted that "no person has any . . . right of first refusal . . . in connection with . . . shares or interests owned by [SPX]." Section 3.1(c) warranted that the sale would not "violate any provision of . . . any . . . agreement . . . to which [SPX] or any of its Affiliates is a party." Finally, § 3.1(d) warranted that SPX had "all requisite power to transfer to [Dana] good and marketable title to the Assets free and clear of all Encumbrances."

In November 1998, Condumex brought a diversity action against SPX and Dana, alleging that the sale of SPX's interest in Promec to Dana violated its right of first refusal in both the 1981 shareholders' agreement and Promec's bylaws. Condumex sought a declaration that the sale was invalid and an order directing Dana to deliver the Promec shares to the secretary of Promec so that the shares could be reissued to Condumex. After a bench trial, the district court sided with

Condumex, finding that SPX had violated the right of first refusal contained in the shareholders'

agreement. The court did not address Condumex's argument that the transaction also violated

Promec's bylaws. The court therefore ordered Dana to transfer the Promec shares to Condumex in

return for a payment of $15 million.

## B.     Indemnification litigation

After Dana delivered its Promec shares as ordered by the district court, Dana brought a cross

claim against SPX seeking indemnification for its costs pursuant to § 10.1(b)(i) of the Purchase

Agreement. Section 10.1(b)(i) provided, in relevant part:

> Section 10.1.  Indemnification by Seller.  Seller covenants and agrees to indemnify and hold harmless Buyer . . . from and against . . . any and all Liabilities . . . (b) resulting from or arising out of:
>
>      (i)  any inaccuracy of any representation or warranty made by Seller herein, . . . (but only, with respect to Transferred Subsidiaries other than the Controlled Subsidiaries and their subsidiaries, other than with respect to those representations and warranties contained in Section 3.1 and 3.2, to the extent Seller has knowledge of the facts or circumstances constituting such inaccuracy (and with respect to the Mexican investments held by SPT NV, only such knowledge [as] Seller has without having undertaken any additional inquiry or investigation)) . . . .

According to Dana, this language required SPX to indemnify Dana because SPX's warranties in

§§ 3.1(d) and 3.2 inaccurately stated that its assets were "clear of all Encumbrances" and that none

of its interests were subject to a right of first refusal.

Upon the parties' motions for judgment on the pleadings, dismissal, and summary judgment, the district court ruled that Dana was not entitled to indemnification. *Grupo Condumex v. SPX Corp.*, 163 F. Supp. 2d 857, 870 (N.D. Ohio 2001). The court held that, although SPX had breached the § 3.2 warranty relating to rights of first refusal, Dana was not entitled to indemnification because § 10.1(b)(i) unambiguously relieved SPX of any liability for the breach. *Id.* at 859-60. The court reached this conclusion after making two findings. First, the court found that SPX's liability for its breach of the right-of-first-refusal warranty as to the Promec shares was limited to the extent that SPX had knowledge of the breach. *Id.* at 864. Dana had argued that no knowledge was required on SPX's part because, in its view, the provision of § 10.1(b)(i) limiting SPX's liability "with respect to the Mexican investments held by SPT NV [the Promec shares], [to] only such knowledge [that SPX] has without having undertaken any additional inquiry or investigation" was modified by the phrase in the same provision, "other than with respect to those representations and warrantied contained in Sections 3.1 and 3.2." Thus, under Dana's interpretation, the requirement that SPX have had knowledge of a breach to be liable did not apply to breaches of the §§ 3.1 and 3.2 warranties (containing the right-of-first-refusal warranty).

The district court, however, rejected Dana's interpretation for a number of reasons. First, applying the "last antecedent rule"—that qualifying phrases apply only to the words preceding them—the court found that the exception for the warranties contained in §§ 3.1 and 3.2 did *not* modify the knowledge requirement as to the Promec shares because the knowledge clause followed

rather than preceded the exception.  *Id.* at 861-61.  Therefore, the only clause qualified by the

exception related to "Transferred Subsidiaries other than the Controlled Subsidiaries":

> (but only, with respect to Transferred Subsidiaries other than the Controlled
> Subsidiaries and their subsidiaries, other than with respect to those representations
> and warranties contained in Sections 3.1 and 3.2, . . . )

In addition, the court found that other provisions of the Purchase Agreement demonstrated that the

parties had intended to shift to Dana the risk that Condumex had a right of first refusal.  *Id.* at 862-

63.  In the court's view, the other provisions together showed that the parties were aware of

Condumex's objections regarding the Promec shares and chose to limit SPX's liability.

After the district court interpreted the indemnification provision to require SPX's knowledge,

the court then found SPX not liable because SPX had not known of "the facts or circumstances" of

the inaccuracy of the warranty "without having undertaken any additional inquiry or investigation."

*Id.* at 867.  According to the court, the phrase "without having undertaken any additional inquiry or

investigation" in § 10.1(b)(i) meant that SPX had to have actual knowledge, which in turn meant

that, to be liable, "SPX must have anticipated a . . . substantial likelihood that Condumex would

assert and prevail on its claim" of first refusal.  *Id.* at 866.  The court found that SPX had possessed

no such knowledge.  SPX had maintained that the right of first refusal in the bylaws was not

triggered because the sale involved a transfer of SP NV shares rather than Promec shares.  Because

SPX had believed that Condumex's claim under the bylaws was meritless, the only claim asserted

at that point, the district court ruled that SPX had not known that Condumex would prevail, and thus SPX had no obligation to indemnify Condumex. *Id.* at 867.

## C.     Attorney's fees litigation

By the time that the district court issued its order regarding indemnification, Dana and Condumex had already reached a settlement whereby Condumex returned the Promec shares to Dana in return for the $15 million it had paid with interest. Additionally, Condumex assigned to Dana its damages claims against SPX, including its claim for attorney's fees. In January 2004, Dana moved for summary judgment on the claim for attorney's fees. Dana argued that, as Condumex's assignee, it was entitled to Condumex's fees under the "collateral litigation exception" to the American rule that each party bears its own attorney's fees. The collateral litigation exception generally entitles the nonbreaching party in a contract dispute (here, Condumex) to recover its expenses from the breaching party (here, SPX) incurred as a result of litigating against a third-party (here, Dana). Although Dana acknowledged that Delaware, whose law apparently governed the fees issue, had never decided whether to adopt the exception, it argued that the district court should apply the exception because "the exception has been adopted in the majority of jurisdictions which have considered it, including Ohio."

The district court, however, refused to apply the exception, finding that the Delaware Superior Court's decision in *Casson v. Nationwide Insurance Company* demonstrated Delaware's adherence to the American rule. *Grupo Condumex, S.A. DE C.V. v. SPX Corp.*, 331 F. Supp. 2d 623,

628 (N.D. Ohio).  In any event, the district court ruled, it was doubtful that the exception would apply even if recognized in Delaware because this case involved one lawsuit against separate parties rather than any "collateral" litigation.  *Id.*  Therefore, the court ruled that Dana was precluded from recovering attorney's fees as a matter of law.

Dana now appeals, arguing that (1) Dana should not have had to show that SPX knew the right-of-first refusal warranty regarding Promec was inaccurate; (2) in any event, SPX knew of the inaccuracy; (3) SPX breached its warranty regarding SP NV because SP NV owned an interest in Promec; and (4) Dana was entitled under Delaware law to Condumex's attorney's fees under the collateral litigation exception to the American rule.

## II.

The district court correctly held that the Purchase Agreement required SPX's knowledge that the Promec warranty was inaccurate; that SPX did not breach its warranties as to SP NV; and that Dana is not entitled to attorney's fees under Delaware law.  However, because a genuine issue of material fact exists as to whether SPX knew that its Promec warranty was inaccurate, a remand is necessary to resolve that issue.

### A.  Standard of review

This court reviews a district court's grant of summary judgment de novo. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  Summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The facts, as well as any inferences that can be drawn from them, must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether a factual issue is genuine, a court must decide "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**B.      The knowledge requirement in the indemnification provision**

Under Michigan law, which controls Dana's indemnification claims, the district court properly found that the Purchase Agreement's indemnification provision, on its face, unambiguously required SPX's knowledge that the Promec warranty was inaccurate. "Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement." *Universal Underwriters Ins. Co. v. Kneeland*, 628 N.W.2d 491, 494 (Mich. 2001). "A contract is ambiguous if its provisions may reasonably be understood in different ways." *Id.*

The contract in this case is not ambiguous because the language of §10.1(b)(1), the indemnification provision, permits only one interpretation. Two substitutions in the language of the operative provision facilitate the analysis considerably. First, the parties agree that the language "Transferred Subsidiaries other than the Controlled Subsidiaries and their subsidiaries" refers to

Allied Ring. Second, the phrase "Mexican investments held by SPT NV" means Promec. Therefore,

§ 10.1(b)(i) can be written as follows:

> Section 10.1. <u>Indemnification by Seller</u>. Seller covenants and agrees to indemnify and hold harmless Buyer . . . from and against . . . any and all Liabilities . . . (b) resulting from or arising out of:
>
> (i) any inaccuracy of any representation or warranty made by Seller herein, . . . (but only, with respect to [Allied Ring], **other than with respect to those representations and warranties contained in Section 3.1 and 3.2**, to the extent Seller has knowledge of the facts or circumstances constituting such inaccuracy (and with respect to [Promec], only such knowledge [as] Seller has without having undertaken any additional inquiry or investigation)) . . .

(emphasis added). The question in this case is what the phrase "other than with respect to those representations and warranties contained in Section 3.1 and 3.2" applies to. Dana argues that the phrase applies to both Allied Ring and Promec, and thus Dana should not have had to show that SPX knew that the right-of-first-refusal warranty as to Promec was inaccurate. SPX, on the other hand, argues that the phrase applies only to Allied Ring.

The district court properly accepted SPX's interpretation because the placement of the words "with respect to Allied Ring" compels the conclusion that the phrase "other than with respect to . . . Section 3.1 and 3.2" does *not* apply to Promec. Dana's sole argument based upon the language of the Purchase Agreement is that the court ignored the parties' use of a second, inner parenthetical (concerning the Promec knowledge requirement) and that the second parenthetical is "to be read as a direct modification of the primary parenthetical," such that the "other than . . . Section 3.1 and 3.2" language applies to the Promec warranties as well as the Allied Ring warranties. This argument

might make sense in the absence of the words "with respect to Allied Ring." But Dana's interpretation gives no purpose to those words. The words "with respect to Allied Ring" must have one of two possible scopes. First, the words may qualify only the "other than . . . Section 3.1 and 3.2" language, in which case the second parenthetical stands independent of the "Section 3.1 and 3.2" proviso. Second, the words "with respect to Allied Ring" may qualify the entire primary parenthetical, in which case the second parenthetical, dealing with an entity (Promec) not yet treated in the primary parenthetical (limited as it is to Allied Ring), must stand independently despite its placement in a second parenthetical. Either way, the second parenthetical cannot be modified by the "other than . . . Section 3.1 and 3.2" language.

Thus, SPX's obligation to indemnify Dana for inaccuracies in the Promec warranties was limited, without exception, to the extent that SPX had "knowledge of the facts or circumstances constituting such inaccuracy . . . without having undertaken any additional or inquiry." Because the Purchase Agreement, on its face, unambiguously required SPX's knowledge, it is not necessary to consider outside evidence. It is therefore necessary to turn to the question whether SPX had knowledge that the warranty was inaccurate.

## C. SPX's knowledge

Although the district court properly found that the Purchase Agreement required SPX's knowledge that the Promec warranty was inaccurate, the evidence, taken in the light most favorable to Dana, creates a genuine issue of material fact as to whether SPX had "knowledge of the facts or

circumstances constituting such inaccuracy . . . without having undertaken additional inquiry or investigation" because SPX knew that a right of first refusal existed in the 1981 shareholders' agreement and that Condumex was asserting a right of first refusal.

The language "without having undertaken additional inquiry or investigation" requires something more than constructive knowledge. Dana does not suggest what else the language might mean other than actual knowledge. However, actual knowledge does not mean, as the district court defined it, actual knowledge of a "substantial likelihood that Condumex would assert and prevail on its claim." "Knowledge" can be separated into two types. First, there is knowledge of the underlying facts, e.g., that a shareholders' agreement existed containing a right of first refusal. Second, there is knowledge, in the form of a legal opinion, that the underlying facts give rise to a claim, i.e., that Condumex would win in court if it asserted the right of first refusal. In this case, the language "facts or circumstances constituting such inaccuracy" suggests that only knowledge of the underlying facts, rather than legal knowledge, was required. The phrase is disjunctive so that knowledge of the "facts . . . constituting such inaccuracy" is sufficient. "Fact" is defined as, among other things, "[t]he aspect of a case at law comprising events determined by evidence *as distinguished from interpretation of law*." *Webster's II New College Dictionary* 401 (2001) (emphasis added). Therefore, the question is whether SPX actually knew of the "facts or circumstances" underlying the Condumex's right of first refusal in the shareholders' agreement.

Viewing the facts in the light most favorable to Dana, a jury reasonably could find that SPX possessed such knowledge. First, the parties do not appear to dispute that SPX knew of the terms

of the shareholders' agreement, including the right of first refusal. Indeed, SPX's general counsel, listed in § 14.10(vi) as an individual whose knowledge was attributed to SPX for purposes of the Purchase Agreement, participated in the negotiation and drafting of the shareholders' agreement. J.A. at 964-67. Second, in 1989, SPX obtained Condumex's consent before transferring SP NV and Promec to SPT, a transaction similar for relevant purposes to the one at issue in this case. J.A. at 154. Taking the facts in the light most favorable to Condumex, this shows that SPX believed there was a reasonable chance that the right of first refusal would be triggered by such a transaction. Finally, Condumex informed SPX on numerous occasions that it had a right of first refusal under the Promec bylaws. Although SPX was found to have breached only the shareholders' agreement, Condumex's protests could have alerted SPX to the possibility that the right under the shareholders' agreement would be implicated as well. Together, this evidence creates a genuine issue of material fact as to whether SPX actually knew that its right-of-first-refusal warranty was inaccurate.

SPX's argument—that it did not have actual knowledge because it had maintained that the transfer of SP NV did not trigger the right of refusal under Promec's bylaws—is unavailing. As stated above, § 10.1(b)(1) required only that SPX have knowledge of the "facts or circumstances" underlying the right of first refusal. The provision does not entitle SPX to hide behind its subjective legal theory. In any event, there is evidence showing that SPX knew that the right would be triggered. That SPX obtained Condumex's consent before initiating a similar transaction shows that SPX thought that Condumex's right of first refusal had some teeth. For these reasons, a genuine

issue of material fact exists as to whether SPX knew that the warranties were inaccurate regarding

Promec.

**D.      Warranty regarding SP NV shares**

Dana argues that SPX also breached warranties regarding SP NV.  In Dana's view, the

SP NV shares were "encumbered," § 3.1(d), and there was a right of first refusal "in connection

with" the SP NV shares, § 3.2, because SP NV held an interest in Promec and the Promec shares

were subject to the  right of first refusal.[1]  This argument fails for two reasons.  First, to argue that

SPX breached the warranties as to SP NV is contrary to the warranties' language.  Section 3.1(d)

warrants that SPX has "good and marketable title to the Assets," while § 3.2 warrants that "no person

has any . . . right of first refusal . . . in connection with such shares or interests owned by" SPX.

There can be no dispute that SPX had a marketable title to the SP NV shares and that the shares

themselves were not subject to a right of first refusal.  Thus, on the face of the warranties there was

no breach.  Second, Dana's argument is contrary to the Purchase Agreement's treatment of

subsidiaries as separate entities.  Section 10.1(b)(i), for example, singles out Promec in the second

parenthetical to require a higher degree of knowledge for indemnification liability.  Dana's argument

would render this provision impotent because Dana could get around it by bringing suit as to SP NV.

---

[1]Dana further argues that the transfer of the SP NV shares violated the warranty contained in § 3.1(c), but its argument is conclusory, *see* Appellant's Br. at 29 ("Under § 3.1(c), SPX warranted that its execution, delivery and performance of the [Purchase Agreement] would not violate any agreement to which it is a party."), and thus waived. *See Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005).

**E.      Attorney's fees**

The district court properly found that the Delaware Supreme Court would not award Dana attorney's fees based upon the collateral litigation exception because Delaware law limits the exceptions to the American Rule to a few special circumstances, and this court exercises considerable caution in anticipating innovations in state law.[2] The collateral litigation exception would permit a plaintiff to recover reasonable attorney's fees when the defendant's breach caused the plaintiff to pay fees for litigation with a third party. *Kforce, Inc. v. Surrex Solutions Corp.*, 436 F.3d 981, 985-86 (8th Cir. 2006); 5 Arthur L. Corbin, Corbin on Contracts § 1037 (1964). The exception applies when the plaintiff engages in collateral litigation; it "does not deal with the cost of litigation with the defendant himself." Corbin, *supra*, § 1037. Although the exception has been recognized by the Restatement of Contracts, *see* Restatement (First) of Contracts § 334, and several states, *see, e.g.*, *Mo. Prop. & Cas. Ins. Guar. Ass'n v. Pott Indus.*, 971 S.W.2d 302, 306 (Mo. 1998), other states have yet to recognize it, *see, e.g.*, *Soley v. Karll*, 853 A.2d 755, 758 n.3 (Me. 2004).

---

[2]Dana did not—as SPX asserts—waive the attorney's fees issue. In its motion in support for summary judgment, Dana's sole argument to persuade the district court to apply the exception was as follows:

> The Delaware courts generally follow the American Rule, but have not yet had the occasion to consider the collateral litigation exception[.] But the exception has been adopted in the majority of jurisdictions which have considered it, including Ohio.

(footnotes omitted). This statement is fairly read to argue that the Delaware Supreme Court would recognize the exception.

Delaware has not yet recognized the collateral litigation exception, and there is no indication

that the Delaware Supreme Court would recognize it. Delaware courts have carefully limited the

award of attorney's fees to a few "special circumstances," such as where fees are authorized by

statute or a contract or where litigation was brought in bad faith. *See Nevins v. Bryan*, 885 A.2d 233,

255 (Del. Ch. 2005); *J.J. White, Inc. v. Metro. Merch. Mart, Inc.*, 107 A.2d 892, 894 (Del. Super.

Ct. 1954). Moreover, the Delaware courts "have been very cautious in approving exceptions to that

general rule." *Walsh v. Hotel Corp. of Am.*, 231 A.2d 458, 462 (Del. 1967). Because Delaware has

expressed a hesitation to adopt new exceptions to the American Rule, and because "[f]ederal courts

hearing diversity matters should be extremely cautious about adopting substantive innovation in state

law," *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004), the district court properly found that

Delaware would not recognize the collateral litigation exception. Dana's arguments based upon

Delaware courts' awarding consequential damages in contract actions and attorney's fees in other

circumstances do not warrant a holding to the contrary.

Even assuming that the Delaware Supreme Court would recognize the collateral litigation

exception, it is not necessarily the case that Condumex would have been entitled to attorney's fees.

Many of the states recognizing the exception, though not all, require that the collateral litigation in

which expenses are incurred be separate from litigation with the breaching party (here, SPX). *See*

*G & D Co. v. Durand Milling Co.*, 240 N.W.2d 765, 767 (Mich. Ct. App. 1976). In this case,

Condumex's fees were incurred in litigation with both SPX and Dana joined as defendants in the

same action.  Thus, under the collateral litigation exception as followed by several states, Dana is not entitled to fees.

## III.

For the foregoing reasons, we reverse the district court's order granting summary judgment in favor of SPX on Dana's indemnification claim based upon the breach of the Promec warranty, and we remand for proceedings consistent with this opinion.  As to other aspects of the judgment of the district court, we affirm.

**CLAY, Circuit Judge**, concurring in part and dissenting in part. I concur with the majority opinion with respect to the conclusions and the underlying analysis contained in Parts II.B, II.D., and II.E. Specifically, I agree that: (1) the indemnification provision of the Asset Purchase Agreement ("APA") required Defendant SPX to have actual knowledge of the facts or circumstances constituting the inaccuracy of the warranty with respect to Promec; (2) Defendant SPX did not breach warranties with respect to Sealed Power Nevada; and (3) Plaintiff was not entitled to attorney's fees under Delaware law. I disagree with the majority opinion, however, as to Part II.C. Specifically, I disagree that the correct inquiry is whether Defendant SPX "believed there was a reasonable chance that the right of first refusal would be triggered by [the transaction between Defendants SPX and Dana]." Maj. Op. at 14. I further disagree that remand is necessary to determine whether the indemnification provision was triggered. I therefore respectfully dissent.

I would first like to note two points of agreement with the majority opinion with respect to Part II.C. I agree with the opinion that "actual knowledge does not mean, as the district court defined it, actual knowledge of a 'substantial likelihood that Condumex would assert and prevail on its claim.'" Maj. Op. at 13. I further agree that "the language 'facts or circumstances constituting such inaccuracy' suggests that only knowledge of the underlying facts, rather than legal knowledge, was required." Maj. Op. at 13. The majority opinion correctly finds a distinction between factual knowledge and legal knowledge, and the majority opinion correctly concludes that only factual knowledge is required under the indemnification provision.

The preceding analysis of the majority opinion makes its proposed inquiry all the more puzzling. Rightfully finding fault with the district court's actual-knowledge-of-a-substantial-likelihood inquiry, the majority opinion proceeds to replace it with an inquiry with the same flaw, as well as an additional flaw. The majority finds that the proper inquiry to determine whether the indemnification provision has been triggered is whether Defendant SPX "believed there was a reasonable chance that the right of first refusal would be triggered by [the transaction between Defendants SPX and Dana]." Maj. Op. at 14. With this inquiry, the majority opinion steps on to the same mistaken path as the district court. Like the district court's "substantial likelihood" inquiry, the "reasonable chance" inquiry peers into the legal knowledge of Defendant SPX, knowledge that the opinion correctly finds is irrelevant to the indemnification provision. The "reasonable chance" inquiry merely lowers the bar as to Defendant SPX's legal knowledge that will trigger the indemnification provision. The majority opinion's reliance on legal knowledge is not unintentional; the majority opinion places importance on whether Defendant SPX "knew that the right [of first refusal] would be triggered" and whether Defendant SPX thought that the "right of first refusal had some teeth," Maj. Op. at 14. These questions unequivocally speak to Defendant SPX's legal knowledge.

Even more troublesome is the majority opinion's replacement of the "actual knowledge" component of the inquiry with a "belief" component. The subjective concept of "belief" is nowhere to be found in the indemnification provision. The majority opinion has, on no justifiable basis, added an additional term to the APA. Moreover, Defendant SPX's belief does not even have to be

objectively reasonable. The resulting inquiry simply does not make any sense. For example, suppose a prior Sixth Circuit case is directly on point; the case holds that indirect transfers trigger a contractual right of first refusal. Suppose that Defendant SPX knew of this case, but mistakenly believed that the case had been overruled by the Supreme Court. Under the majority opinion's inquiry, Defendant SPX would not be liable because it did not believe there was a reasonable chance that the indemnification provision would be triggered, a conclusion that is absurd on its face. The hypothetical exposes the intrinsic flaw in the majority opinion's inquiry: it is unabashedly circular. Under the majority opinion's logic, the indemnification provision is triggered if Defendant SPX believed the provision would be triggered; the indemnification provision is not triggered if Defendant SPX did not believe the provision would be triggered. With such an inquiry, one does not need to possess clairvoyance to predict Defendant SPX's argument on remand. Defendant SPX will assert that the mere fact that it entered into the APA demonstrates that it did not believe that the indemnification provision would be triggered. Only if Defendant SPX's officers were in dereliction of their duty to the corporation and its shareholders would they enter into an agreement believing that an indemnification provision in that agreement would be triggered, thus subjecting the corporation to millions of dollars of liability. In short, the majority opinion's inquiry would "entitle SPX to hide behind its subjective legal theory." Maj. Op. at 14.

A much more literal and straightforward approach is in order. As the majority opinion initially and correctly notes, the key point should be the "underlying facts" of the inaccuracy of the Promec warranty. Maj. Op. at 13. Thus, the inquiry should be whether Defendant SPX had actual

knowledge of the underlying facts, as opposed to legal knowledge, constituting the inaccuracy of the Promec warranty. The parties do not dispute the district court's finding that the Promec warranty was inaccurate. The underlying fact of the inaccuracy is the existence of Plaintiff's right of first refusal under the 1981 shareholders' agreement. There is no question that Defendant SPX had actual knowledge of this underlying fact. General counsel for Defendant SPX, whose knowledge is imputed to Defendant SPX under the APA, participated in drafting the 1981 shareholders' agreement. In addition, it is more than fair to presume that a party to a contract has actual knowledge of the provisions of the contract. There is no genuine issue of material fact; Defendant SPX is liable to Defendant Dana under the indemnification provision of the APA.

I would therefore reverse the grant of summary judgment in favor of Defendant SPX, reverse the denial of summary judgment against Defendant Dana, and grant summary judgment in favor of Defendant Dana on the indemnity issue. I would remand to the district court only to determine the amount of Defendant SPX's liability to Defendant Dana under the indemnification provision of the APA.