Corrigan, C.J.
We granted leave to determine whether a contractual provision that assigned “all responsibility for damages” to defendant while she rented a vehicle contravenes our no-fault act, MCL 500.3101 et seq., and thereby voids the parties’ con *493 tract. We hold that the no-fault act does not prevent contracting parties from voluntarily allocating liability for collision damage to a rented vehicle. We thus affirm the judgment of the Court of Appeals.
1. underlying facts and procedural history
While repairing defendant’s vehicle, plaintiff Betten Toyota loaned her a vehicle. Defendant and a Betten employee signed a “courtesy car agreement” that stated:
1. Rental fco-QNLY $28.00 per day.
2. Renter agrees to replace gasoline used.
3. Renter agrees to pay cash for rental charge.
4. Renter agrees to assume all responsibility for damages while vehicle is in his possession.
5. Renter agrees not to sublet or loan the car to anyone. [Emphasis added.]
While driving the rented vehicle, defendant was involved in an accident. Total collision damages amounted to $3,738.49. Betten Toyota absorbed $1,000 as a deductible; plaintiff Universal Underwriters Insurance Company, Betten’s insurer, paid the remainder.
Betten and Universal sought recovery from defendant, but she refused to pay. Plaintiffs then commenced this action alleging breach of the courtesy car agreement. Universal seeks recovery as Betten’s subrogee of the $2,738.49 it paid to repair the rented vehicle; Betten demands payment of the $1,000 deductible.
Plaintiffs moved for summary disposition under MCR 2.116(C)(10), arguing that no genuine issue of material fact existed regarding defendant’s contrac *494 tual liability. The district court instead granted summary disposition for defendant under MCR 2.116(I)(2).[1] It relied on an unpublished Court of Appeals opinion to conclude that the no-fault act does not allow contractual allocation of liability for collision damages. Universal Underwriters Ins Co v Stout, unpublished opinion per curiam, issued February 2, 1996 (Docket No. 171069). The circuit court affirmed.
The Court of Appeals reversed and remanded for entry of a judgment in plaintiffs’ favor unless the district court “determines that defendant has defenses that have not yet been addressed, in which case the court shall conduct proceedings consistent with” the Court of Appeals opinion. 235 Mich App 646, 662; 599 NW2d 519 (1999). It noted that while the no-fault act abrogated tort liability arising from the ownership, maintenance, or use of a motor vehicle (except in certain circumstances),[2] it did not abolish contractual liability. See Kinnunen v Bohlinger, 128 Mich App 635, 638; 341 NW2d 167 (1983); Nat'l Ben Franklin Ins Co v Bakhaus Contractors, Inc, 124 Mich App 510, 513; 335 NW2d 70 (1983).
The Court of Appeals distinguished this Court’s peremptory order in Universal Underwriters Ins Co v Vallejo, 436 Mich 873; 461 NW2d 364 (1990). Vallejo held that the defendant-renter was entitled to summary disposition on the insurer’s claim for collision damages to a rented vehicle:
*495 Although the trial court gave the plaintiff insurer numerous opportunities to explain, with specific factual allegations, how its conclusory allegation of an express or implied contract of bailment differentiated this case from any other situation in which a permissive user of a car is involved in a collision and therefore cannot return the car to its owner in an undamaged condition, the plaintiff repeatedly failed to do so. Under these circumstances, the trial court correctly granted the defendant’s motion for summary disposition. By operation of the pertinent insurance statutes, e.g., MCL 257.520(b)(2); MSA 9.2220(b)(2) and MCL 500.3009; MSA 24.13009, the defendant appears to have been insured by the plaintiff against the very loss at issue in this case, since a standard automobile policy typically insures such a permissive driver “against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of” a motor vehicle. [Id.]
The Court of Appeals noted that, while the plaintiff in Vallejo relied on a common-law bailment theory, plaintiff here seeks recovery under the express terms of a written agreement. The Court did not read Vallejo “as a blanket rejection of all contract claims seeking to hold a permissive user responsible for damage to a borrowed vehicle. Rather, we understand the order as rejecting the insurer’s effort to convert a simple, permissive-user, tort liability case into a contract case by alleging an express or implied contract of bailment, without providing specific factual allegations that would support such a distinction.” Knee-land, supra at 659. The Court reasoned that Vallejo suggested the possibility of a different result where there is proof of an express contract.
n. standard op review
We review de novo a grant of summary disposition under MCR 2.116(C)(10). Smith v Globe Life Ins Co, *496 460 Mich 446, 454; 597 NW2d 28 (1999). The issue under review is a question of law, i.e., whether the no-fault act prevents contractual assignment of liability for collision damages. We review questions of law de novo. Cardinal Mooney High School v Michigan High School Athletic Ass’n, 437 Mich 75, 80; 467 NW2d 21 (1991).
HI. CONTRACTUAL INTERPRETATION
Before deciding whether the courtesy car agreement contravenes public policy, we must determine what the contract states. Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement. Henderson v State Farm Fire & Casualty Co, 460 Mich 348, 354; 596 NW2d 190 (1999). A contract is ambiguous if its provisions may reasonably be understood in different ways. Farm Bureau Ins Co v Nikkel, 460 Mich 558, 566; 596 NW2d 915 (1999).
The fourth provision of the courtesy car agreement states: “Renter agrees to assume all responsibility for damages while vehicle is in his possession.” This language clearly imposes liability on defendant. The contract is unclear, however, regarding the extent of the shift of liability. The provision refers to “damages,” but does not explicate precisely the categories of damages that defendant has agreed to pay.
The general term “damages” could refer to any harm caused to a third party’s person or property, i.e., it could reach damages for which no-fault insurance coverage is mandatory. See, e.g., MCL 500.3107, 500.3121. A shift of liability to that extent might con *497 travene the no-fault act. Cf. State Farm v Enterprise Leasing, 452 Mich 25, 36; 549 NW2d 345 (1996).[3]
Another reasonable inteipretation of the contract is available, however. Black’s Law Dictionary (6th ed) defines “damages” as “[a] pecuniary compensation or indemnity, which may be recovered in the courts by any person who has suffered a loss, detriment, or injury, whether to his person, property, or rights . . . .” The parties may reasonably have intended to limit the meaning of the word “damages” to losses for which a legal right of recovery is available.
An ambiguity arises also because the contract shifts liability for damages “while [the] vehicle is in [defendant’s] possession.” Damages to the vehicle itself are likely to occur while the renter possesses the vehicle. But other types of damages, including wage loss and medical expenses, often arise after the rental period has ended. The contract does not clearly shift liability for the latter kinds of damages.
We thus conclude that the words of the contract may reasonably be understood in different ways. This ambiguity requires us to assume that the parties knew the law and wished to comply with it. See 3 Corbin, Contracts, § 546, pp 170-171:
[I]t is very commonly stated that when the terms of agreement have two possible interpretations, by one of which the agreement would create a valid contract and by the other it would be void or illegal, the former will be preferred. This is an advisory rule of interpretation, since it is *498 believed that the parties intend their agreement to be valid rather than invalid, lawful rather than unlawful, and honest and effective rather than fraudulent and voidable.
See also Walsh v Schlecht, 429 US 401, 408; 97 S Ct 679; 50 L Ed 2d 641 (1977) (“Since a general rule of construction presumes the legality and enforceability of contracts, . . . ambiguously worded contracts should not be interpreted to render them illegal and unenforceable where the wording lends itself to a logically acceptable construction that renders them legal and enforceable”); Stillman v Goldfarb, 172 Mich App 231, 239; 431 NW2d 247 (1988).
We follow these authorities and presume that the parties intended to enter a valid, enforceable agreement and that the contract thus does not shift liability for damages that may not legally be reallocated.
IV. THE DISSENT’S APPROACH
The dissent first construes the contract against its drafter and the drafter’s subrogee by extending the shift of liability beyond collision damages. The dissent would then invalidate the contract on the basis of its allegedly illegal reach. We reject that analysis.
The dissent misapplies the rule requiring that contractual ambiguities be construed against the drafter by using the rule not to interpret the contract, but to invalidate it. As discussed above, courts will presume that a contract is legal if a reasonable interpretation supporting the legality of the contract is available. The dissent instead concludes that the parties meant to accomplish illegal ends by their agreement.
Moreover, the dissent does not find an ambiguity regarding whether defendant’s liability extends to col *499 lision damages. As discussed above, the only ambiguity is whether the contract shifted liability beyond collision damages. A reasonable interpretation is not available — and even defendant does not contend— that she did not agree to liability for collision damages.
A proper application of the rule of construction against the drafter would adopt the interpretation making defendant liable to the least extent possible, i.e., for collision damages only. Thus, regardless of whether one applies the rule of construction against the drafter or the rule presuming the legality of contracts, the same result is reached: the contract shifts liability for collision damages only.
V. IS THE ASSIGNMENT OF COLLISION DAMAGES VOID?
Having concluded that the contract shifts liability for collision damages only, we now consider whether the no-fault act prohibits the parties’ voluntary allocation of responsibility. To decide this question, we must consider relevant statutory provisions. Sun Valley Foods Co v Ward, 460 Mich 230, 236; 596 NW2d 119 (1999), articulated the proper mode of interpretation:
The rules of statutory construction are well established. The foremost rule, and our primary task in construing a statute, is to discern and give effect to the intent of the Legislature. Murphy v Michigan Bell Telephone Co, 447 Mich 93, 98; 523 NW2d 310 (1994). See also Nation v W D E Electric Co, 454 Mich 489, 494; 563 NW2d 233 (1997)- This task begins by examining the language of the statute itself. The words of a statute provide “the most reliable evidence of its intent . . . .” United States v Turkette, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981). If the language of the stat *500 ute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted. Tryc v Michigan Veterans’ Facility, 451 Mich 129, 135; 545 NW2d 642 (1996).
Our no-fault act requires owners to carry certain categories of insurance. Mandatory coverages include personal injury protection and property protection benefits. MCL 500.3107, 500.3121. Other types of coverage, however, are not mandatory, but purely a matter of contract. Collision coverage plainly falls into the latter category: our no-fault scheme does not mandate it.
Additionally, § 3135 of our no-fault act, MCL 500.3135, expressly abolishes tort liability arising from the ownership, maintenance, or use of a motor vehicle (with some exceptions). The statutory language does not reflect an intent to abolish contractual liability for collision damages, an optional form of insurance not required by the no-fault act. See Kinnunen, supra at 639 (“Had the Legislature intended to abrogate contractual liability as well, the words any ‘liability arising out of the ownership, maintenance, or use of a motor vehicle’ could easily have been substituted”); Ben Franklin Ins, supra at 513 (“Nothing in the no-fault system relieves a motor vehicle operator of liability which he may have incurred in contract”).[4]
Further, the Court of Appeals correctly ruled that Vallejo is distinguishable. The limited reasoning in that peremptory order offers little guidance. It ap *501 pears, however, that the insurer in Vallejo was relying on a common-law bailment theory. The order does not mention an express written agreement.
Vallejo prevents a party from converting a possible tort claim into a “contract” claim by simply alleging a bailment and thereby subverting subsection 3135(2). Those concerns do not arise where parties have expressly agreed in writing to allocate their respective duties.
VI. subrogation
Our grant order asked the parties to address “whether, if defendant is held to be liable for damage to the automobile at issue based on her contract with plaintiff Betten Toyota, her liability is limited to the $1,000 deductible in Betten Toyota’s insurance policy covering that automobile on the ground that this was the extent of the damages suffered by Betten Toyota.” 462 Mich 911 (2000). We hold that damages are not limited to the amount of the deductible.
Betten incurred $3,738.49 in damages to its vehicle, but had to pay only $1,000; Universal paid the balance. The plain terms of Betten’s insurance policy grant Universal a right of subrogation to Betten’s cause of action against defendant:
Subrogation — You and each insured must do all in their power to preserve their rights to recover from others. Once we have made a payment under this policy, your or an insured’s rights to recover from others become our rights.
Defendant has not articulated a reason why Universal may not exercise its contractual right of subrogation.
*502 Significantly, defendant did not challenge Universal’s subrogee status below. In fact, her attorney implicitly acknowledged Universal’s right of subrogation during proceedings in the district court:
Mr. Arndt [defense counsel]: ... I don’t think either one of the parties made a distinction between Universal’s claim or Betten’s claim. Certainly Universal’s claim is derivative of their subragor (sic) insured Betten. I guess it would be our position that the case law and specifically Universal versus Valajo [sic] addresses both not only the insurer but the owners responsibility to make sure that there is adequate protection and insurance coverage on the vehicle. I think that the case law that you’ve relied upon in determining and adjudicating the issues of liability between Universal and Kneeland are equally applicable to Betten and Kneeland. That there would be no distinction between the two claims, whether it was insured or uninsured. [Emphasis added.]
Defendant has thus forfeited any claim that Universal has no right of subrogation. Smith v Musgrove, 372 Mich 329, 337; 125 NW2d 869 (1964); Munson Medical Center v Auto Club Ins Ass’n, 218 Mich App 375, 388; 554 NW2d 49 (1996).
vn. CONCLUSION
The no-fault act does not invalidate the parties’ written agreement to assign liability for collision damages to defendant. Universal has a right of subrogation under the express terms of its insurance policy with Betten to seek recovery of the amount it paid to repair the rented vehicle. Accordingly, we affirm the judgment of the Court of Appeals.
Taylor, Young, and Markman, JJ., concurred with Corrigan, C.J.

 The rule provides: “If it appears that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party.”

 MCL 500.3135(2).

 We express no view regarding whether State Farm, would control the legality of the contract here. This agreement and the one addressed in State Farm, are arguably different in scope and effect. We merely observe that an argument is available that the parties’ agreement, if it reaches beyond optional collision damages, is illegal.

 We emphasize that our holding is limited to contract claims for collision damages. We offer no view regarding the legality of a contract purporting to shift liability for other categories of damages.