MOORE, Circuit Judge.
The National Institute for Strategic Technology Acquisition and Commercialization (NISTAC) appeals the grant of Ford Motor Company’s (Ford) motion to dismiss NISTAC’s patent infringement claims under Federal Rule of Civil Procedure 12(b)(6). The United States District Court for the Eastern District of Texas determined that NISTAC’s claims were barred by paragraph 3.3 of an October 31, 2000 agreement (the donation agreement) by which the patents-in-suit were assigned to NISTAC’s predecessor. Because we conclude that the language of the donation agreement unambiguously releases Ford from any and all claims arising from NISTAC’s enforcement of the patents at issue, we affirm the district court’s grant of Ford’s motion to dismiss.
BACKGROUND
Ford originally assigned four U.S. patents, Nos. 5,239,955, 5,319,919, 5,469,777, and 5,554,020 (collectively, the patents-in-suit), to Ford Global on March 1, 1997.[1] On October 31, 2000, Ford Global and the MidAmerica Commercialization Corporation (MACC) executed the donation agreement under which Ford Global assigned thirty patents (the donated patents), including the patents-in-suit, to MACC. Ford Global also agreed to pay MACC $184,000 to cover the maintenance fees of the donated patents. MACC agreed to the disclaimers listed in article 3 of the donation agreement. Based on MACC’s status as a not-for-profit company, Ford claimed its assignment as a charitable donation having a value of $26,950,000 for tax purposes.
In March 2006, NISTAC[2] decided to offer the donated patents for sale via a live auction. In response, Ford demanded that NISTAC withdraw two of the patents-in-suit from the auction. NISTAC agreed not to auction the donated patents and granted Ford a non-exclusive license. In exchange, Ford paid NISTAC a $1,000,000 signing fee and agreed to pay reasonable royalties. Less than six months later, Ford notified NISTAC that it was unilaterally terminating the license agreement.
*892 Following the termination, NISTAC filed this infringement action. Ford subsequently moved to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that paragraph 3.3 of the donation agreement constituted a release that barred NISTAC’s claims. The district court granted Ford’s motion to dismiss. NISTAC timely appealed.
DISCUSSION
The parties agree that Michigan law governs the donation agreement. Under Michigan law, “[t]he proper interpretation of a contract is a question of law, which this court reviews de novo.... Accordingly, we examine the language in the contract, giving it its ordinary and plain meaning if such would be apparent to a reader of the instrument.” Wilkie v. Auto-Owners Ins. Co., 469 Mich. 41, 664 N.W.2d 776, 780 (2003). “If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties’ intent as a matter of law.” In re Smith Trust, 480 Mich. 19, 745 N.W.2d 754, 758 (2008). “A contract is ambiguous if its provisions may reasonably be understood in different ways.” Universal Underwriters Ins. Co. v. Kneeland, 464 Mich. 491, 628 N.W.2d 491, 494 (2001).
We review the grant of a dismissal under Rule 12(b)(6) by applying the law of the regional circuit. Phonometrics, Inc. v. Hospitality Franchise Sys., Inc., 203 F.3d 790, 793 (Fed.Cir.2000).
In the Sixth Circuit, a dismissal under Fed.R.Civ.P. 12(b)(6) raises a question of law that is subject to de novo review. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir.2001). The court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief. Mayer v. Mylod, 988 F.2d 635, 637-38 (6th Cir.1993).
Polymer Indus. Prod. Co. v. Bridge-stone/Firestone, Inc., 347 F.3d 935, 937 (Fed.Cir.2003).
We must first determine whether the language of the agreement—specifically, the language of paragraph 3.3—is ambiguous. Paragraph 3.3 of the donation agreement states:
3.3 For its part, [NISTAC][3] hereby agrees to release [Ford], its officers, directors, employees and agents, and each of them, from any and all claims which [NISTAC] might otherwise have against any of them by reason of the practice of [Ford’s] Patent Rights by [NISTAC], its licensees or transferees.
While it is somewhat awkward to base a waiver on NISTAC’s practice of Ford’s patent rights, it does not render the terms of the donation agreement ambiguous. Paragraph 2.1 explains:
2.1 [Ford] hereby assigns and contributes to [NISTAC], at no cost to [NISTAC], [Ford’s] entire right, title and interest in the Donated Technology (hereinafter “[Ford’s] Patent Rights”). Such assignment and contribution includes [Ford’s] right to enforce [Ford’s] Patent Rights and to recover damages for any infringement retroactively to the issue date of any patent included in [Ford’s] Patent Rights.
According to the plain reading of these provisions, Ford assigned to NISTAC all of Ford’s rights in the patents—including *893 the right to enforce the patents. Further, NISTAC agreed to release Ford from any and all claims arising from NISTAC’s “practice” of these assigned patent rights. Because the patent rights are defined as including both the right to enforce and the right to recover damages for patent infringement, NISTAC therefore agreed to release Ford from any claims for patent infringement—exactly the claims that NISTAC asserted before the district court. The district court acknowledged this waiver, holding that “under the plain meaning of the release of paragraph 3.3 the Court finds that Ford is released from NISTAC’s enforcement of the Patent Rights.” We agree; the language of paragraph 3.3 is subject to only one reasonable interpretation, and is thus unambiguous. See Universal Underwriters, 628 N.W.2d at 494.
NISTAC further argues that even if the language of paragraph 3.3 is unambiguous, it should be construed to limit the release to NISTAC’s “making, using, or selling of the donated technology.” NISTAC asserts that the term “practice”—as used in paragraph 3.3—has a specialized meaning in patent law—to make, use, or sell. While we agree that “practice the invention”—a term used in paragraph 2.6 of the donation agreement—could be interpreted as making, using, or selling a claimed invention, that term is not used in paragraph 3.3. Instead, paragraph 3.3 concerns “the practice of [Ford’s] patent rights.” Paragraph 2.1 of the contract defines Ford’s patent rights as including the right to enforce the donated patents, thus by the terms of the contract, NISTAC agreed not to enforce the donated patents against Ford.
To the extent that NISTAC argues that the district court’s construction of the contract’s terms renders paragraph 3.3 surplusage, we do not agree. Paragraph 3.1 provides that Ford will not indemnify NISTAC from infringement suits by third parties; paragraph 3.2 provides that Ford disclaims any responsibility for NISTAC’s use of the patent rights; and paragraph 3.3 provides that Ford is released from any infringement claims by NISTAC based on the donated patents. There is no conflict among the properly construed provisions of the donation agreement.
Finally, NISTAC argues that the district court’s construction of paragraph 3.3 must be incorrect because it would be contrary to the parties’ stated intentions. Specifically, NISTAC asserts that if paragraph 3.3 gave Ford a de facto license to the donated patents, then Ford would have been prohibited from claiming a charitable donation—-the purpose of the assignment as set forth in paragraph 2.4 of the donation agreement. NISTAC supports its arguments by noting that I.R.S. Notice 2004-7 and Revenue Ruling 2003-28 prohibit the claiming of charitable donations when patent rights are retained.
The district court refused to consider this issue, opining that “[t]he court further does not consider the tax implications as that issue is not before the Court.” Similarly, we decline to express any view on the tax consequences to Ford. Even if we were to accept as true NISTAC’s assertions regarding the tax consequences, such evidence—extrinsic evidence—cannot be used to alter the plain language of the contract under Michigan law. Mich. Chandelier Co. v. Morse, 297 Mich. 41, 297 N.W. 64, 67 (1941). We have considered all arguments raised by NISTAC in this appeal and find them unpersuasive.
CONCLUSION
Because the plain language of the donation agreement bars NISTAC’s claims, we affirm the district court’s grant of Fords motion to dismiss under Fed.R.Civ.P. 12(b)(6).

. Ford Global is a wholly owned subsidiary of Ford that manages Ford’s intellectual property-

. MACC changed its name to NISTAC in 2004.

. Where appropriate, we have replaced the terms "the DONOR” and "the DONEE” with "[Ford]” and "[NISTAC]”, respectively.