STATE OF MICHIGAN
COURT OF APPEALS

C. A. HULL COMPANY, INC.,

       Plaintiff-Appellant,

v

DEPARTMENT OF TRANSPORTATION,

       Defendant-Appellee.

UNPUBLISHED
December 23, 2014

No. 317789
Court of Claims
LC No. 13-000063-MK

Before: M. J. KELLY, P.J., and CAVANAGH and METER, JJ.

PER CURIAM.

This breach-of-contract case concerns a dispute over what areas of a bridge were to be painted under a construction contract. The Court of Claims granted defendant's motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). Plaintiff appeals as of right. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I. FACTUAL BACKGROUND

The contract at issue concerned work being done on 23 bridges along I-675 in Saginaw County. This dispute centers on provisions of the contract dealing with painting the Henry Marsh Bridge, the largest of the 23 bridges and the only one to extend over water. Plaintiff contends that after it finished performing under the contract, defendant demanded plaintiff complete additional painting. Defendant claims that it was not asking plaintiff to do anything other than perform its contractual obligation. Plaintiff completed the additional work and this litigation followed.

The roadway of the bridge is supported by several beams that run parallel to the roadway and that rest on the support columns. The contract between plaintiff and defendant identifies four fascia beams, two for the bridge that makes up the northbound portion of interstate and two for the bridge that makes up the southbound portion of interstate. The beams are made of several segments connected by 537 splices. At the end of each beam segment there is the end diaphragm, a portion of steel that is perpendicular to all the fascia beams. At the end diaphragm the beams are held together by a pin and hanger assembly. The portion where the pieces come together and the splice is made is referred to as the "centerline."

The main portion of the contract that is disputed is project plan sheet 59 (sheet 59). Sheet 59 specifically concerns the Henry Marsh Bridge, and under the heading "PAINTING NOTES," the document states:

> The area within 3 feet each side of the centerline of the pin and hanger assemblies that are being replaced shall be coated prior to installing the new link plates and pins. Proposed link plates shall be shop coated.
>
> The estimated area of structured steel to be coated is 48,250 square feet. This area of structural steel to be coated includes the end diaphragms, end diaphragm connection plates and the fascia side and bottom of each fascia beam.
>
> * * *
>
> For additional notes see the miscellaneous structural steel details sheet 1E.

The parties dispute what is included in the 48,250 square feet estimate, and whether the estimate represents the total amount or only part of painting that was required to be completed. Plaintiff contends that the estimate represents the entire amount of painting required. Specifically, plaintiff contends that it was required to paint three feet each side of the centerline of the pin and hanger assemblies, the end diaphragms and their connection plates, and the fascia side and bottom of each fascia beam within three feet of the centerline of the pin and hanger assembly. Defendant contends that the estimate is meant to include only part of the painting that was to be done. Specifically, defendant contends that estimate includes painting of the end diaphragms, end diaphragm connection plates, and the fascia side and bottom of the two outermost fascia beams along the entire length of the bridge. Defendant also contends that plaintiff was to separately paint the pin and hanger assemblies and the interior beams, including the interior fascia beams, within three feet each side of the centerline, but that this painting is not included in the estimate on sheet 59.

## II. STANDARD OF REVIEW

Both parties moved for summary disposition, arguing that the contract was unambiguous. We review de novo the trial court's decision on the parties' motions for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Similarly, whether language in a contract is ambiguous is a question of law that we review de novo. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 462; 663 NW2d 447 (2003).

## III. ANALYSIS

"A contract must be interpreted according to its plain and ordinary meaning." *Alpha Capital Mgt Inc v Rentenbach*, 287 Mich App 589, 611; 792 NW2d 344 (2010). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written . . . ." *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). "A contract is ambiguous if its provisions may reasonably be understood in different ways," *Universal Underwriters Ins Co v Kneeland*, 464 Mich 491, 496; 628 NW2d 491 (2001), or where provisions within the contract irreconcilably conflict with each other, *Klapp*, 468 Mich at 467. If there are two reasonable

interpretations of a contract, factual development is necessary and summary disposition is inappropriate. *Meagher v Wayne State Univ*, 222 Mich App 700, 722; 565 NW2d 401 (1997). However, inartful wording or a clumsy arrangement of words will not make a contract ambiguous if the contract "admits of but one interpretation . . . ." *Id.*

After review, we conclude that the contract is ambiguous and that, therefore, factual development is necessary and summary disposition in favor of neither party is inappropriate.

## A.  PLAINTIFF'S INTERPRETATION

Upon receiving the bid documents, plaintiff's subcontractor added up the surface area that it believed was included in the estimate and arrived at 48,075 square feet.  While plaintiff's estimate under its interpretation is close to the contractual estimate, as a whole the passage from sheet 59 quoted above does not clearly support plaintiff's interpretation.  The second sentence of the second paragraph refers to "this area of structured steel."  "[T]his area" is defined in the preceding sentence as "48,250 square feet."  The second sentence goes on to provide a specific list of what is included in the 48,250 square foot estimate:  "the end diaphragms, end diaphragm connection plates and the fascia side and bottom of each fascia beam."  The second sentence mentions nothing about pin and hanger assemblies or link plates and pins.  However, plaintiff argues, sheet 59 specifically directs the reader to project plan sheet 1E, which contains a table with notes on pin and hanger assemblies for the other 22 bridges in the project, a section called "suspender notes," and a section called "painting notes."  Plaintiff argues that a sentence at the bottom of the table—"** estimated area of cleaning and coating includes the amount for pin and hanger joint area"—can be used to conclude that the estimate on sheet 59 includes the painting of pin and hanger assemblies.

This interpretation is unreasonable.  First, the instructions on sheet 59 that direct the reader to sheet 1E are clearly under a heading called "PAINTING NOTES."  Thus, it is reasonable to conclude that the "additional notes" sheet 59 refers to are only the similar painting notes found on sheet IE.  Second, it is reasonable to conclude that when there are four sentences beneath a table, the first beginning with "*," the second with "**," the third with "***," and the fourth with "****," these sentences are simply used to explain a part of the table that corresponds with the applicable number of asterisks.  See *The Gregg Reference Manual* (New York:  Glencoe/McGraw-Hill, 2001), ¶ 292, p 80 ("The asterisk may be used to refer the reader to a footnote placed at the bottom of a page or table.").  It is an unreasonable interpretation to conclude that such an explanation device could be used to describe something unrelated to the table, chart, or graph that it was appended to.

Plaintiff also argues that the estimate on sheet 59 must include the painting associated with the pin and hanger assemblies; plaintiff states that the first paragraph cannot simply be an instruction on *when* to paint those assemblies because that instruction is already given in the standard specifications.  Neither party disputes that the standard specifications, which are published on defendant's website, are part of the contract.  It is not rewritten for every single project defendant bids out.  It is understandable in these circumstances that the general instructions in the standard specifications would at times be duplicative of the specific instructions on the project plan sheets.  In any event, to the extent that it is surplusage to include

this instruction twice, surplus language alone cannot be used to create an ambiguity. *Michigan Twp Participating Plan v Pavolich*, 232 Mich App 378, 387-388; 591 NW2d 325 (1998).

Plaintiff also posits that because there are four fascia beams, there can only be two interpretations of the disputed contractual provisions on sheet 59, its own interpretation or one that includes painting the bottom and fascia side of all four fascia beams, not simply the outside fascia beams as defendant asserts. Plaintiff argues that given the fact that there are four fascia beams, if the instructions on sheet 59 directed the painting of the entire bottom and entire fascia side of *each* fascia beam, that would mean all four fascia beams had to be painted, and painting that portion of all four fascia beams yields a figure far in excess of 48,250 square feet. Plaintiff then argues that because that interpretation cannot be correct, its interpretation must be. However, this argument fails to take into account that there is another possible interpretation of these paragraphs—the one that defendant posits.

In sum, plaintiff cannot show that that the interpretation it posits is the unambiguous meaning of the contract. Therefore, it is not entitled to summary disposition and we affirm that portion of the order of the Court of Claims that denied summary disposition to plaintiff.

## B. DEFENDANT'S INTERPRETATION

While the disputed contractual provisions do not unambiguously support plaintiff's interpretation, they also do not support defendant's interpretation. Defendant asserts that the instructions on sheet 59 only include the outer two fascia beams, and thus the estimate on sheet 59 includes painting of the end diaphragms, end diaphragm connection plates, and the fascia side and bottom of only the outer two fascia beams.

The first sentence of the second paragraph excerpted from sheet 59 estimates the square feet to be painted, and the second sentence lists what is included in that estimate. The list does not include pin and hanger assemblies. However, the word "includes" does not necessarily mean that the list following it is exhaustive. The usage notes under the word "include" in the *Random House College Dictionary* (1997) state that the word "may indicate one, several, or all parts . . . ." Simply because the list does not specify the painting associated with the pin and hanger assemblies does not mean it is an unreasonable interpretation to include it in the estimate. Indeed, the painting of the pin and hanger assemblies is specifically discussed in the immediately preceding paragraph.

## IV. CONCLUSION

The contract between the parties is ambiguous. Because there are two reasonable interpretations of this contract, factual development is necessary and summary disposition is inappropriate. *Meagher*, 222 Mich App at 722.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter