*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MOSES C. JONES, JR.,

Plaintiff-Appellant,

v

MCLAREN MEDICAL MANAGEMENT, INC.,
doing business as MCLAREN MEDICAL GROUP,
MCLAREN HEALTH CARE CORPORATION, and
MCLAREN LAPEER REGION,

Defendants-Appellees.

UNPUBLISHED
October 6, 2022

No. 358333
Genesee Circuit Court
LC No. 18-111698-CD

Before: K. F. KELLY, P.J., and LETICA and RICK, JJ.

PER CURIAM.

Plaintiff, Dr. Moses C. Jones, Jr., appeals as of right the trial court's August 10, 2021 order, granting summary disposition under MCR 2.116(C)(10) (no material questions of fact) on Dr. Jones's claim under the Elliott-Larsen Civil Rights Act (CRA), MCL 37.2101 *et seq.*, and claim of wrongful discharge in violation of public policy. The trial court entered the August 10, 2021 order in favor of defendants, McLaren Medical Management, Inc., doing business as McLaren Medical Group; McLaren Health Care Corporation; and McLaren Lapeer Region. Dr. Jones also challenges the trial court's September 30, 2019 order granting summary disposition in favor of defendants and dismissing Dr. Jones's amended wrongful discharge in violation of public policy claim and claim under the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*, under MCR 2.116(C)(7) (statute of limitations) and (C)(10). We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

Dr. Jones is a licensed neurosurgeon. In 2013, Dr. Jones met with Barton Buxton, President and Chief Executive Officer (CEO) of McLaren Lapeer Region, and Dr. Gary Salem, McLaren Lapeer Region's Chief Medical Officer regarding a permanent neurosurgeon position. Subsequently, Dr. Jones and McLaren Medical Group entered into an employment agreement, which commenced on December 1, 2013, and scheduled to terminate on November 30, 2016.

-1-

After Dr. Jones began working at McLaren Lapeer Region's facility, he focused on improving the neurosurgery department and the quality of care provided to the patients. Dr. Jones often communicated his concerns and suggestions to defendants' agents.

In July 2016, McLaren Medical Group and Dr. Jones agreed to extend Dr. Jones's employment contract through November 30, 2019. The 2016 agreement was consistent with the 2013 agreement. The agreement could "be terminated or canceled, at any time . . . [b]y either party, for any or no reason, upon 60 days' prior written notice[.]" Several months later, Buxton resigned as McLaren Lapeer Region's president and CEO. He was replaced by Christopher Candela. According to Dr. Jones, Candela is "numbers guy" and McLaren Lapeer Region became "more and more money focused." Dr. Jones asserted that the "culture" at the facility "induced pressure to perform surgeries whether medically advisable or not."

In November 2017, Dr. Jones had a meeting with Candela and Dr. Salem. According to Dr. Jones, Candela and Dr. Salem wanted to discuss Dr. Jones's retirement plans. After Dr. Jones stated that he wanted to continue his employment, Dr. Salem and Candela informed Dr. Jones "there was a need to bring in someone younger to replace [him] and that it was getting harder all the time to get a younger person to come to Lapeer." In December 2017, or January 2018, neurosurgeon Dr. Ryan Barrett expressed an interest in working as an independent contractor at McLaren Lapeer Region. Candela decided to terminate Dr. Jones's employment and hire Dr. Barrett, who is 22 years younger than Dr. Jones.

On June 7, 2018, Dr. Jones met with Candela, who informed Dr. Jones his "contract was being terminated with 60 days written notice." According to Dr. Jones, Candela reiterated "they needed to replace [him] with someone younger." On June 8, 2018, William Hardimon, President and CEO of McLaren Medical Group, sent Dr. Jones a letter via certified mail. The letter indicated Dr. Jones's employment would terminate effective August 7, 2018. Dr. Jones, who was 68 years old at the time, received the letter on June 12, 2018.

On October 8, 2018, Dr. Jones filed suit, alleging violation of the WPA, a claim of age discrimination, and a claim of wrongful discharge in violation of public policy. Dr. Jones later filed a first-amended complaint, which was consistent with the allegations contained in the original complaint. Defendants moved for summary disposition on the WPA claim, alleging it was time-barred. Defendants also moved for summary disposition on the claim of wrongful discharge in violation of public policy. Dr. Jones opposed the motion. After hearing oral argument, the trial court granted defendants' motion for summary disposition, but granted Dr. Jones leave to file a second-amended complaint to "flesh[] . . . out" the wrongful discharge in violation of public policy claim.

Dr. Jones filed the second-amended complaint, which contained claims of wrongful discharge in violation of public policy and age discrimination. The allegations were substantially similar to those contained in the original complaint and the first-amended complaint. Defendants again moved for summary disposition, arguing Dr. Jones "failed to articulate well-established legislation in support of" his public policy claim. Defendants further argued Dr. Jones was unable to establish "termination of his employment was the result of age discrimination." Rather, defendants argued Dr. Jones's termination "was in response to the annual $500,000 losses to the Hospital, which resulted from [Dr. Jones's] compensation." Dr. Jones opposed the motion,

arguing genuine issues of material fact existed for trial. After hearing oral argument, the trial court took the matter under advisement. The trial court later entered the August 10, 2021 opinion and order, and granted summary disposition in favor of defendants. This appeal followed.

## II. DISMISSAL OF THE WPA CLAIM

Dr. Jones argues the trial court erred by dismissing the WPA claim under MCR 2.116(C)(7) based on the court's conclusion the claim was time-barred. We agree.

## A. STANDARDS OF REVIEW

Summary disposition is appropriate under MCR 2.116(C)(7) when a claim is barred by the statute of limitations. MCR 2.116(C)(7). We review de novo a trial court's decision on a motion for summary disposition. *Altobelli v Hartmann*, 499 Mich 284, 294-295; 884 NW2d 537 (2016).

> When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Dextrom v Wexford Co*, 287 Mich App 406, 428-429; 789 NW2d 211 (2010) (citations omitted).]

"[A] trial court's interpretation and application of a statute," *Grand Rapids v Brookstone Capital, LLC*, 334 Mich App 452, 457; 965 NW2d 232 (2020), and "questions involving the proper interpretation of a contract or the legal effect of a contractual clause" are also reviewed de novo, *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

## B. ANALYSIS

The underlying purpose of the WPA is protection of the public. *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 378; 563 NW2d 23 (1997). The WPA "meets this objective by protecting the whistleblowing employee and by removing barriers that may interdict employee efforts to report violations or suspected violations of the law." *Id*. at 378-379 (footnote omitted). The WPA is a remedial statute, and must "be liberally construed to favor the persons the Legislature intended to benefit." *Chandler v Dowell Schlumberger, Inc*, 456 Mich 395, 406; 572 NW2d 210 (1998).

"A person who alleges a violation of [the WPA] may bring a civil action for appropriate injunctive relief, or actual damages, or both within 90 days after the occurrence of the alleged violation of [the WPA]." MCL 15.363(1). The WPA provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location,

or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. [MCL 15.362.]

The WPA does not define "discharge." Therefore, it is proper to consult dictionary definitions. *In re Casey Estate*, 306 Mich App 252, 260 n 3; 856 NW2d 556 (2014). "Discharge" has been defined as "the act of relieving of something that oppresses," "the act of removing an obligation or liability," and "to dismiss from employment" or "release from service or duty[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed). Thus, an employee is discharged from employment when he or she is no longer obligated to his or her employer.

As explained in *Millar v Constr Code Auth*, 501 Mich 233, 240-241; 912 NW2d 521 (2018):

[I]n order for an actionable wrong under the WPA to have occurred, an employer must have done more than simply make a decision to discriminate against an employee. Instead, the employer must have taken an adverse employment action against the plaintiff. It is the employer's *action* to implement the decision that triggers the running of the limitations period; not the decision itself. [Footnote omitted.]

Additionally, our Supreme Court recognized that "a claim for discriminatory discharge cannot arise until a claimant has been discharged." *Id*. at 240, quoting *Collins v Comerica Bank*, 468 Mich 628, 633; 664 NW2d 713 (quotation marks omitted); see *Collins*, 468 Mich at 633 ("[W]here a plaintiff has already been subjected to an alleged discriminatory termination, a cause of action naturally accrues on the last day an employee worked.").

The trial court concluded that defendants took "action" to implement their decision to terminate Dr. Jones's employment when the June 8, 2018 letter was sent to Dr. Jones, determining that the letter "effectuated" his discharge . However, the relevant question is whether Dr. Jones was obligated under the 2016 employment agreement to continue his employment after receiving the letter. To answer this question, we must interpret the employment agreement.

"The primary goal in the construction or interpretation of any contract is to honor the intent of the parties[.]" *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 473; 663 NW2d 447 (2003). "Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement. A contract is ambiguous if its provisions may reasonably be understood in different ways." *Universal Underwriters Ins Co v Kneeland*, 464 Mich 491, 496; 628 NW2d 491 (2001) (citation omitted).

The 2016 employment agreement commenced on December 1, 2016, and was scheduled to terminate on November 30, 2019. However, under § 5.03(b), the agreement could "be terminated or canceled, at any time . . . [b]y either party, for any or no reason, upon 60 days' prior

written notice[.]" Therefore, defendants could terminate Dr. Jones's employment so long as they provided 60 days' written notice. However, the termination was not immediately effective. After Dr. Jones was provided written notice, he was required to continue to fulfill the terms of the agreement for the duration of the 60-day period. This is reflected in the June 8, 2018 letter to Dr. Jones, which stated:

> Per your conversation with Chris Candela on June 7, 2018, this letter is to inform you that McLaren has elected to terminate the Employment Agreement. Under Section 5.03(b) of the Employment Agreement, McLaren has decided to terminate the Employment Agreement upon 60 days' prior written notice. This letter constitutes written notice that your employment and the Employment Agreement, will terminate effective August 7, 2018.

> Between today June 8, 2018 and July 31, 2018, you will continue your responsibilities under the employment agreement. Between August 1, 2018 and August 7, 2018, McLaren will be relieving you of all responsibilities under th[e] Agreement. McLaren will continue to pay your compensation and provide health insurance and the other employee fringe benefits provided under the Employment Agreement until August 7, 2018.

> For purposes of clarity, the restrictions, covenants, and terms set forth in Sections 7, 9, 11, 12 and 13 of the Employment Agreement shall continue in accordance with their terms. McLaren expects you to fully comply with all of your obligations and reserves all rights and remedies.

It is undisputed Dr. Jones's termination was effective on August 8, 2018. Dr. Jones was no longer obligated to fulfill the terms of the 2016 employment agreement as of that date. Defendants took action to implement their decision to terminate Dr. Jones's employment on August 8, 2018, which is the date Dr. Jones stopped being paid and receiving benefits from defendants. Therefore, Dr. Jones was "discharged" on August 8, 2018, and the 90-day statute of limitations began to run on that date. Because the undisputed evidence establishes that the statute of limitations had not expired with regard to the WPA claim when the complaint was filed, the trial court erred by granting summary disposition under MCR 2.116(C)(7). We therefore reverse that portion of the court's order.

## III. DISMISSAL OF WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY AND AGE-DISCRIMINATION CLAIMS

Dr. Jones argues the trial court erred by granting summary disposition on the claims of wrongful discharge in violation of public policy and age discrimination. We agree in part.

### A. STANDARD OF REVIEW

A trial court's decision regarding a motion for summary disposition is reviewed de novo. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence

submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks, citations, and emphasis omitted).]

"The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013).

## B. ANALYSIS

### 1. WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY CLAIMS

Dr. Jones argues the trial court erred by dismissing his wrongful discharge in violation of public policy claims. We disagree.

In the absence of a contract providing to the contrary, employment is usually terminable by the employer or the employee at any time, for any or no reason whatsoever. There is, however, a public-policy exception to this rule; an employer is not free to discharge an at-will employee when the reason for the discharge contravenes public policy. [*Rivera v SVRC Indus, Inc (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 341516); slip op at 3 (citations omitted).]

Termination of at-will employment is typically proscribed by public policy in Michigan in three situations: (1) "adverse treatment of employees who act in accordance with a statutory right or duty," (2) an employee's "failure or refusal to violate a law in the course of employment," or (3) an "employee's exercise of a right conferred by a well-established legislative enactment." *Suchodolski v Mich Consol Gas Co*, 412 Mich 692, 695-696; 316 NW2d 710 (1982). Thus, "[t]he three circumstances recognized by the Supreme Court in *Suchodolski* for when public policy prohibits termination entail an employee exercising a right guaranteed by law, executing a duty required by law, or refraining from violating the law." *Rivera*, ___ Mich App at ___; slip op at 4 (quotation marks and citation omitted). "[A]s a general rule, making social policy is a job for the Legislature, not the courts . . . ." *Id*. at ___; slip op at 4 (quotation marks and citations omitted). Thus, "[p]ublic policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Id*. at ___; slip op at 4 (quotation marks and citations omitted). "[C]ourts may only derive public policy from objective sources." *Id*. at ___; slip op at 4 (quotation marks and citations omitted).

Regarding Dr. Jones's first claim regarding wrongful discharge in violation of public policy, defendants argued that summary disposition was proper on the basis of Dr. Jones's answers to the interrogatories. Defendants asked Dr. Jones to "identify by name the persons associated with any of the Defendants who directed [Dr. Jones] to perform unnecessary and unlawful surgeries. . . ." Dr. Jones responded that he was not "specifically" told he "needed to perform

-6-

unnecessary or unlawful surgeries." Rather, Dr. Jones stated, "the environment and general atmosphere . . . strongly encouraged a culture of revenue generation, many times to the detriment of patient care."

Because it appeared Dr. Jones was relying on the second circumstance outlined in *Suchodolski*, i.e., an employee's "failure or refusal to violate a law in the course of employment," *Suchodolski*, 412 Mich at 695, the trial court focused on the fact that Dr. Jones did not allege that anyone directly told him to violate the law. However, neither the trial court nor Dr. Jones specifically identified what "law" defendants' agents allegedly encouraged Dr. Jones to violate. Notably, Dr. Jones failed to cite any "laws [or] legal precedents" in support of this in his first-amended complaint. See *Rivera*, ___ Mich App at ___; slip op at 4 ("Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.") (quotation marks and citations omitted).

Additionally, in response to defendants' first motion for summary disposition, Dr. Jones simply argued that defendants' motion "must be denied because there are many ways that Plaintiff can prove his State of Michigan Public Policy Claim and Michigan case law and Michigan Court Rules allow litigants that opportunity by permitting litigants to conduct discovery." Because Dr. Jones failed to identify any objective source to support his wrongful discharge in violation of public policy claim, summary disposition was proper. Although the trial court relied on different grounds, "[a] trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason." *Bailey v Antrim Co*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357838); slip op at 4 (quotation marks and citation omitted).

After granting defendants' first motion for summary disposition, the trial court permitted Dr. Jones to amend the first-amended complaint in order to "flesh . . . out" his claim of wrongful discharge in violation of public policy. Dr. Jones filed a second-amended complaint, which included another wrongful discharge in violation of public policy claim. Defendants again moved for summary disposition, and the trial court granted the motion, which Dr. Jones now challenges on appeal. We conclude that this argument is abandoned. While Dr. Jones cited numerous statutes in response to defendants' second motion for summary disposition, he did not explain or rationalize how the statutes conferred him specific rights. Indeed, Dr. Jones did not even specify what portions of the statutes he was relying on, or how his conduct related to the statutes. Rather, he simply provided the list of statutes without explaining how they applied. Dr. Jones does the same thing in his brief on appeal before this Court. A party "may not merely announce [their] position and leave it to this Court to discover and rationalize the basis for [their] claims, nor may [a party] give issues cursory treatment with little or no citation of supporting authority." *Houghton v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003) (citations omitted). Consequently, because Dr. Jones merely announces his position without providing meaningful analysis, the argument is abandoned and will not be considered.[1] See *id*.

---

[1] We acknowledge that, in his reply brief on appeal, Dr. Jones argues MCL 333.20176a provided him with rights. While Dr. Jones attempts to explain how he exercised his rights under MCL 333.20176a, he does so for the first time in his reply brief on appeal. "Reply briefs must be

## 2. AGE-DISCRIMINATION CLAIM

Dr. Jones argues the trial court erred by granting summary disposition in favor of defendants on his claim of age discrimination because he presented direct evidence of discrimination sufficient to create genuine issues of material fact. We agree.

Dr. Jones alleges that defendants violated the CRA by terminating his employment him because of his age, which is prohibited under the CRA. MCL 37.2202(1)(a). This claim of intentional discrimination "may be established by direct or indirect evidence." *Harrison v Olde Fin Corp*, 225 Mich App 601, 606; 572 NW2d 679 (1997).

"In some discrimination cases, the plaintiff is able to produce direct evidence of . . . bias. In such cases, the plaintiff can go forward and prove unlawful discrimination in the same manner as a plaintiff would prove any other civil case." *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001). Direct evidence "is evidence that proves impermissible discriminatory bias without additional inference or presumption." *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 607 n 34; 886 NW2d 135 (2016). "For example, racial slurs by a decisionmaker constitute direct evidence of racial discrimination that is sufficient to get the plaintiff's case to the jury." *Harrison*, 225 Mich App at 610 (quotation marks and citation omitted). Additionally, a superior's statements that an employee was "getting too old" could constitute direct evidence of discrimination. *DeBrow v Century 21 Great Lakes, Inc (After Remand)*, 463 Mich 534, 539; 620 NW2d 836 (2001). In age discrimination cases, this Court has examined statements allegedly showing employer and considered numerous factors including

> whether the comments were made by a decision maker or by an agent within the scope of his employment; whether they were related to the decision-making process; whether they were more than merely vague, ambiguous, or isolated remarks; and whether they were proximate in time to the act of termination. [*Krohn v Sedgwick James of Mich, Inc*, 244 Mich App 289, 298; 624 NW2d 212 (2001) (quotation marks and citation omitted)].

In this case, Dr. Jones met with Candela on June 7, 2018. According to Dr. Jones's affidavit, Candela told Dr. Jones that his "contract was being terminated with 60 days written notice" because "they needed to replace [Dr. Jones] with someone younger." This is consistent with Dr. Jones's response to defendants' first interrogatories. It is undisputed Candela was the decision-maker and the alleged statement was made within the scope of Candela's employment as President and CEO of McLaren Lapeer Region. While Candela denies making this statement,

---

limited to rebuttal of the arguments in the appellee's or cross-appellee's brief. Raising an issue for the first time in a reply brief is not sufficient to present the issue for appeal." *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012) (quotation marks, citations, and alterations omitted). Therefore, because the argument is not properly before this Court, it will not be considered.

conflicting evidence merely creates a question of fact for the trier of fact. See *Pioneer State Mut Ins Co*, 301 Mich App at 377.

While the trial court concluded Dr. Jones's "[s]elf-serving testimony [was] insufficient to create a question of material fact when the record evidence contradicts that self-serving testimony," this was in error. In reaching this conclusion, the trial court relied on *Fuhr v Trinity Health Corp*, 495 Mich 869; 837 NW2d 275 (2013), which adopted Judge HOEKSTRA'S dissenting opinion in *Fuhr v Trinity Health Corp*, unpublished per curiam opinion of the Court of Appeals, issued April 16, 2013 (Docket No. 309877) (HOEKSTRA, J., dissenting). This reliance was erroneous because the facts in *Fuhr* are distinguishable from the facts in this case. In *Fuhr*, the plaintiff did not claim he was terminated because he contacted the United States Attorney until he was deposed and the evidence indicated that the decision to terminate the plaintiff was made before the plaintiff did so. *Id*. In the instant case, Dr. Jones consistently asserted that he was terminated because of his age.

With respect to the remaining factors to consider, Candela's alleged statement related to the decision-making process and was "proximate in time to the act." See *Krohn*, 244 Mich App at 298. Candela made the alleged statement on June 7, 2018. The 60-day written notice was mailed to Dr. Jones the next day. Dr. Jones was actually terminated. Additionally, Candela's alleged statement was not vague or ambiguous. Rather, it amounted to a discriminatory remark.

Moreover, the statement was not an "isolated remark." In November 2017, Dr. Jones had a meeting with Candela and Dr. Salem. According to Dr. Jones, "the sole issue they wanted to discuss was [Dr. Jones's] retirement plans." Dr. Jones indicated Dr. Salem "specifically inquired about [Dr. Jones's] age . . . and wanted to know when [he] was going to retire." After Dr. Jones expressed his "intention to continue [his] employment," Dr. Salem and Candela informed Dr. Jones "there was a need to bring in someone younger to replace [him] and that it was getting harder all the time to get a younger person to come to Lapeer." While Candela denied these statements were made and Dr. Salem opined that questions regarding Dr. Jones's retirement related to "succession planning," this merely creates a genuine issue of material fact. In sum, Dr. Jones presented "evidence that proves impermissible discriminatory bias without additional inference or presumption." *Hecht*, 499 Mich at 607 n 34.

After a plaintiff has presented direct evidence of discrimination, the plaintiff must also prove his or her qualification for the position. *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 133; 666 NW2d 186 (2003). In this case, it is undisputed Dr. Jones was qualified for the position. The only dispute is whether his employment was terminated because defendants were trying to save costs. Importantly, "[a] defendant may avoid a finding of liability by proving that it would have made the same decision even if the impermissible consideration had not played a role in the decision." *Id*. at 133.

Candela asserted that he terminated Dr. Jones's employment because he "had an opportunity to bring on board [ Dr. Barrett]" who had "the same skill set" but defendants did "not have to employ him and ultimately save the organization over a million bucks." Candela testified Dr. Barrett did not receive benefits and was "just paid for the days that he[ ] [was] on call." Candela later clarified, the "savings wasn't a million, but it was significant." When asked if there

was "some type of economic issue that was going on within the organization," Candela responded: "Not any more than usual."

Dr. Salem testified that, based on conversations with Candela, he believed Dr. Jones's employment was terminated because "[h]e was very costly." Dr. Salem noted "another neurosurgeon who had an outstanding reputation that wanted to be independent" had approached Candela. According to Dr. Salem, terminating Dr. Jones's employment and hiring Dr. Barrett resulted in "a $500,000 cost savings." Dr. Salem also testified Dr. Jones "was probably a big financial loss of the institution and health system" because he did not perform "a lot of surgeries." However, Dr. Salem did not believe McLaren Lapeer Region was facing "economic challenges." Mark O'Halla, McLaren Health Care Corporation's Chief Operating Officer, agreed there were "concerns about the economic viability of [Dr. Jones's ] practice."

While there is evidence to support that Dr. Jones was terminated to save costs, other reasons were given to support Dr. Jones's termination. Dr. Salem told Buxton that Dr Jones's services were no longer needed. Based on a market analysis conducted by Buxton, Buxton believed there were "needs in that community for a neurosurgeon" Buxton had also reviewed Dr. Jones's productivity before the employment contract was renewed in 2016. Buxton "felt it was appropriate." and he had not received any complaints regarding Dr. Jones's performance. Hardimon testified that before Candela terminated Dr. Jones's employment, Candela told Hardimon he was "looking for increased coverage of the program" and "more favorable economic terms" i.e., "[a] lower rate." Specifically, Candela wanted someone "[t]o be able to cover the program 24 hours a day 365 days a year[.]" However, Candela testified that Dr. Barrett covered approximately 20 days out of a calendar month.

Given the conflicting testimony and evidence regarding Dr. Jones's termination, material questions of fact exist for trial. Importantly, when a plaintiff has provided "direct proof that the discriminatory animus was causally related to the decisionmaker's action . . . . an employer may not avoid trial by merely 'articulating' a nondiscriminatory reason for its action." *Harrison*, 225 Mich App at 613. Rather, "the case ordinarily must be submitted to the factfinder for a determination whether the plaintiff's claims are true." *Id.* We conclude that Dr. Jones's age discrimination claim should be submitted to a jury, and that the trial court erred by granting summary disposition in favor of defendants. We therefore reverse that portion of the August 10, 2021 order.

Based on this conclusion, we need not consider whether the trial court erred by granting summary disposition in favor of defendants based on its conclusion that Dr. Jones failed to establish a prima facie case of discrimination using indirect, or circumstantial evidence, under the burden-shifting test outlined in *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). Indeed, "[t]he shifting burdens of proof described in *McDonnell Douglas* are not applicable if a plaintiff can cite direct evidence of unlawful discrimination." *DeBrow*, 463 Mich at 539. Nonetheless, to the extent we have considered it, we conclude genuine issues of material fact exist for trial.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Anica Letica
/s/ /Michelle M. Rick